United States District Court
Southern District of Texas
**ENTERED**
October 30, 2023
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| Traelyn Smith, | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | Civil Action 4:22-CV-1321 |
| | § | |
| Bobby Lumpkin, | § | |
| Director, Texas Department | § | |
| of Criminal Justice, Correctional | § | |
| Institutions Division, | § | |
| *Respondent.* | § | |

## Memorandum and Recommendation

Traelyn Smith, a Texas state inmate, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 to challenge his 2019 state-court conviction for murder. The respondent, Bobby Lumpkin, has answered the petition. ECF No. 10. Smith has replied. ECF No. 13. The court recommends that Smith's petition be dismissed.

### I.     *Procedural Background*

Smith is in custody of the Texas Department of Criminal Justice—Correctional Institutions Division (TDCJ) as the result of a state-court conviction in the 337th District Court of Harris County, Texas (Cause No. 1639259). Dkt. 11-1 at 149–50. Smith was charged with one count of murder. *Id.* at 8. Following a trial, a jury found Smith guilty as charged and, on August 19, 2019, sentenced him to a 99-year prison term. *Id.* at 149–50.

The First Court of Appeals of Texas affirmed Smith's conviction. *Smith v. State*, No. 01-19-00724-CR, 2020 WL 7062396 (Tex. App.—Houston [1st Dist.] Dec. 3, 2020, pet. ref'd). The Texas Court of Criminal Appeals refused Smith's petition for

discretionary review on February 24, 2021. *Smith v. State*, PD-0045-21 (Tex. Crim. App. Feb. 24, 2021).

Subsequently, Smith filed a state application for writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure, collaterally challenging his conviction. *Ex parte Smith*, Application No. WR-93,941-01. On August 31, 2022, the Court of Criminal Appeals denied the application, without a written order. *Id.*

In April 2022, while his state habeas application remained pending, Smith filed the instant federal petition. ECF No. 1. In his sole ground for relief, Smith alleges there was insufficient evidence to support his conviction. *Id.*

The respondent argues that Smith's petition should be dismissed with prejudice because his claim is without merit. ECF No. 10.

## II.   *Factual Background*

The statement of facts is taken from the Texas Court of Appeals opinion affirming Smith's conviction.

> A grand jury indicted Smith for the murder of Quincy Jackson. Smith pleaded not guilty and was tried by a jury.
>
> One evening, Brianna Arteaga was in her apartment on Jenkins Road when she heard six gunshots. After hearing them, she looked out her balcony's sliding door and saw a red car speeding away. Arteaga heard police sirens within minutes and went outside, where she saw Jackson lying on the ground across the street from another apartment building.
>
> B. Martinez, a peace officer with the Pasadena Police Department, was the first officer to arrive at the scene of the shooting. Martinez found Jackson lying on the ground unresponsive and bleeding. Martinez saw that Jackson had been shot in the back several times.

Kenny Wong, a paramedic, also responded to the shooting. Like Martinez, Wong found Jackson unresponsive and bleeding. Wong bandaged Jackson's gunshot wounds and performed CPR but was unable to revive Jackson. With the approval of a physician supervisor, Wong pronounced Jackson dead at the scene.

J. Lawhorn, another peace officer with the Pasadena Police Department, also responded to the shooting. Lawhorn obtained video footage from an apartment complex surveillance camera located across the street from the crime scene.

The manager of the complex, Linda Orellana, confirmed that the surveillance cameras were working at the time of the shooting. The State played the video footage during her testimony. It showed Jackson falling down as he was approached by a red car. A white car passed him from the opposite direction in the same timeframe.

W. Randles, a crime scene investigator with the Pasadena Police Department, was driving nearby on State Highway 225 when dispatch radioed about a red Ford Fusion suspected of being involved in the shooting. Randles was off duty and in an unmarked police vehicle. Within roughly three minutes of dispatch's broadcast, Randles spotted a red Ford Fusion. Randles notified dispatch of the car's location and then followed it until marked police vehicles arrived and began pursuing it.

J. Hinojosa, a peace officer with the Pasadena Police Department, was the first to begin pursuing the red Ford Fusion in a marked police vehicle after Randles spotted it on Highway 225. The State played Hinojosa's dash-camera footage during his testimony. Hinojosa had activated his lights and sirens, but the driver of the Fusion, later identified as Smith, did not stop. Hinojosa continued pursuing Smith onto

3

Highway 610. By this point, Smith had increased his speed and was fleeing from Hinojosa. Smith drove on the shoulder to avoid and pass heavy traffic on 610.

Smith exited the highway. Hinojosa then dropped back and another officer, C. Gassett, became the primary pursuer. Smith traveled on the frontage road a while and then got back on 610. Hinojosa opined that Smith did so to try and elude the pursuing officers. Smith later exited the highway again and entered a Houston neighborhood, where he exceeded the speed limit by as much as 20 miles per hour.

Smith eventually stopped, got out of the car, and fled on foot. With the aid of a K-9 unit, Hinojosa and other officers searched for Smith. The State played the search footage recorded by Hinojosa's body camera during his testimony. Officers found Smith hiding in a garage. When they found him, he was only wearing boxer briefs though it was February.

Gassett, the other Pasadena Police Department peace officer involved in the pursuit, also had activated his emergency lights and sirens. During his testimony, the State played the footage from Gassett's dash camera. Gassett saw Smith stop the Fusion, get out, and flee on foot. Smith was the only person to get out of the car and flee after it stopped. When Smith fled on foot, he was fully dressed in dark clothing.

Gassett did not immediately pursue Smith because he did not know whether other suspects remained in the Fusion. The initial broadcast from dispatch indicated there might be multiple occupants. Gassett detained another nearby man. Gassett's dash-camera footage, however, showed this other man had exited a white car that was parked in the vicinity. Gassett concluded this man was not a suspect based on his cooperation and a neighbor's reassurance that the man was not involved.

Sergeant S. Red of the Houston Police Department is a K-9 unit supervisor and handler who helped oversee the search for Smith after he fled on foot. When the dog found Smith, he was hiding in a garage and had barricaded the garage door with a mattress to prevent entry. The dog was the first to enter and barked excitedly, indicating it had found its target. Officers did not find any weapons in the garage.

A. Sanchez, a peace officer with the Pasadena Police Department, arrived after Smith had been taken into custody. Sanchez sampled Smith's hands for gunshot residue after Smith was transported to jail. Kristina May, a trace evidence analyst with the Harris County Institute of Forensic Sciences, analyzed these samples and concluded that one hand had particles characteristic of "activities such as firing a weapon, being in close proximity to a firearm during discharge, or handling a firearm, a fired cartridge, or some other surface bearing" gunshot residue.

In his role as crime scene investigator, Randles later searched the Fusion. He found bullets, spent cartridges, a loaded magazine for a semiautomatic pistol, and a spring from a semiautomatic pistol. In the glovebox, Randles found a box of .40 caliber bullets. The bullets in the pistol magazine and the spent cartridges found elsewhere in the car were of the same caliber and manufacture as the box of bullets.

Tammy Lyons, a firearms analyst with the Harris County Institute of Forensic Sciences, analyzed a fired bullet recovered during the investigation. The record is unclear as to the where this fired bullet was found. No bullets were recovered from Jackson's body. Lyons concluded the bullet was consistent with a .40 caliber bullet.

J. Stephens of the Pasadena Police Department was the lead detective assigned to this case. He spoke to witnesses at the scene of the shooting. More than one

witness told Stephens that a red Ford Fusion sped away from the scene. One witness reported that several people were in the Fusion, but he later said he could not tell how many were in the car due to its dark-tinted windows. Two other witnesses told Stephens that they saw a white car at the scene. But these two witnesses did not see the shooting. In fact, no witnesses actually saw the shooting.

Stephens viewed the video footage from the apartment complex's surveillance camera. The video indicated that Jackson was shot as the Fusion pulled up alongside him. A white vehicle eventually passed by, but Stephens testified that the video showed Jackson already had been shot. Stephens further testified that the location of Jackson's gunshot wounds were consistent with the Fusion's direction of travel, not the white car's. Stephens confirmed that Smith was the red Ford Fusion's owner.

Stephens testified that from the time the shooting was first reported to police until Smith was in custody just under 45 minutes had elapsed.

Stephens stated that officers never found the pistol used to shoot Jackson. According to Stephens, the semiautomatic pistol spring found in the Fusion could have resulted from the shooter disassembling the pistol. He opined that someone can do so mostly using a single hand in about half a minute even while driving.

Deputy P. Galvan of the Harris County Sheriff's Office, compiled Smith's recorded jailhouse phone calls. One of these calls was played during Stephens's testimony. In this call, Smith told the other person on the line, "My shit is somewhere on 610." Based on the context, Stephens opined that Smith meant he discarded a pistol along the highway.

Lieutenant N. Gates, an investigator with the Harris County District Attorney's Office, analyzed data relating to Smith's cellular phone, which also was recovered from the red Ford Fusion. Specifically, Gates mapped out the location of the phone based on cellular tower data. This data showed the phone was in the general area where Jackson was shot about ten minutes before the police were called about the shooting.

Smith's stepfather, Byron Woods, testified that Smith could not use his left hand effectively. Smith's mother, Cheryl Foley, testified that her son's left hand was malformed due to a birth defect.

The jury found Smith guilty of murder and assessed his punishment at 99 years' confinement.

*Smith*, 2020 WL 7062396 at *1–3.

## III.      Discussion

### A.      Standard of Review under 28 U.S.C. § 2254(d)

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Harrington v. Richter*, 562 U.S. 86, 98–99 (2011); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this court considers whether the application was objectively unreasonable. *Id.* "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102. As stated by the Supreme Court in *Richter*,

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.

*Id.* at 102–03 (emphasis added; internal citations omitted).

AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing

8

evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330–31. This presumption extends not only to express findings of fact, but to the implicit findings of the state court as well. *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citations omitted).

### B.    Sufficiency-of-the-Evidence Claim

In his sole ground for relief, Smith contends the evidence was legally insufficient to support his conviction.

On federal habeas review of a state-court conviction, a challenge to the legal sufficiency of the evidence is governed by *Jackson v. Virginia*, which reflects the federal constitutional due process standard. *See Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002). This standard requires a reviewing court to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (citation omitted) (emphasis in original). The Supreme Court has emphasized "that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 132 S. Ct. 2060, 2062 (2012) (per curiam). A federal habeas court questions whether the state court's assessment of the *Jackson* standard was unreasonable. *See* 28 U.S.C. § 2254(d)(1). Together, *Jackson* and AEDPA create a "double dose of deference that can rarely be surmounted." *Boyer v. Belleque*, 659 F.3d 957, 964 (9th Cir. 2011).

The Texas First Court of Appeals considered Smith's challenge to the sufficiency of the evidence under the *Jackson* standard and concluded that the evidence was legally sufficient to support his conviction for murder. Because the Texas Court of Criminal Appeals denied relief without a written order, this court considers the intermediate appellate court's decision as "the last

reasoned opinion" on Smith's challenge to the sufficiency of the evidence. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–06 (1991) (federal courts "look through" an unexplained state-court denial to evaluate the last reasoned state-court decision). In considering Smith's claim, the state appellate court set forth the following analysis:

### B.   Applicable law

A person commits murder if he intentionally or knowingly causes another's death or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes another's death. TEX. PENAL CODE § 19.02(b)(1)–(2). A motive to commit murder may be a circumstance indicative of guilt, but it is not an element of murder. *Colone v. State*, 573 S.W.3d 249, 266 (Tex. Crim. App. 2019). A person is responsible for a murder committed by another if the person intends to promote or assist the commitment of the murder and solicits, encourages, directs, aids, or tries to aid the other person to commit the murder. PENAL § 7.02(a)(2).

### C.   Analysis

It is undisputed that no one saw the shooting. Nor did anyone see the occupants of the red Ford Fusion as it drove by Jackson. Thus, there is no eyewitness testimony that Smith pulled the trigger, was behind the wheel, or in the car. But eyewitness testimony is not required to prove murder. *See Gardner v. State*, 306 S.W.3d 274, 285–86 (Tex. Crim. App. 2009) (evidence sufficient to prove beyond reasonable doubt defendant murdered victim despite lack of eyewitness testimony that defendant did so or was even in state at time of offense); *see also Marquez v. State*, 725 S.W.2d 217, 236–38 (Tex. Crim. App. 1987) (potential juror properly excluded on basis he would require eyewitness testimony to find defendant guilty of murder).

The record contains a substantial amount of evidence connecting Smith to the drive-by shooting of Jackson. This includes evidence that:

- video surveillance showed a red car slow as it approached Jackson on the street, after which Jackson fell to the ground;
- multiple witnesses reported they saw a red car speed away from the scene of the shooting;
- when officers tried to stop a red Ford Fusion nearby within minutes of the shooting, its driver refused to stop and tried to evade them;
- when the red Ford Fusion finally stopped, it had a single occupant, the driver, who then fled from officers on foot;
- with the assistance of a canine, officers found this man hiding in a garage;
- this man, identified as Smith, had gunshot residue on one of his hands;
- data associated with Smith's cell phone, which was recovered from the Fusion, placed the phone in the shooting's vicinity shortly beforehand;
- officers found .40 caliber spent cartridges and bullets, a loaded pistol magazine, and a semiautomatic pistol spring in the red Ford Fusion;
- forensic evidence showed that whoever shot at Jackson used bullets that were consistent with a .40 caliber firearm; and
- in a recorded jailhouse call, Smith made statements that a detective interpreted to mean he tossed a pistol while fleeing on the highway.

When viewed in the light most favorable to the prosecution, these circumstances and the reasonable inferences therefrom are legally sufficient to prove that Smith murdered Jackson, or took part in his murder, beyond a reasonable doubt.

Smith argues that the evidence is insufficient because the State did not present evidence connecting him

with Jackson or suggesting a motive for the shooting. But motive is not an element of the crime. *Colone*, 573 S.W.3d at 266. Thus, lack of evidence of motive cannot render the evidence legally insufficient. *See Bland v. State*, No. 01-13-00303-CR, 2014 WL 4855024, at *5 (Tex. App.—Houston [1st Dist.] Sept. 30, 2014, no pet.) (mem. op., not designated for publication).

Smith also argues that peace officers and investigators failed to secure evidence that would have been easy to obtain and could have exonerated him. For example, at trial defense counsel questioned officers about their ostensible failure to adequately investigate whether the occupants of the white vehicle shot Jackson.

But the State was not required to disprove all reasonable alternative hypotheses inconsistent with Smith's guilt to present legally sufficient evidence to support the jury's guilty verdict. *Johnson*, 560 S.W.3d at 226; *Zuniga v. State*, 551 S.W.3d 729, 739 (Tex. Crim. App. 2018). Instead, in assessing the legal sufficiency of the evidence, we consider only whether the inferences necessary to prove Smith's guilt are reasonable based on the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). In making this assessment, we cannot speculate based on hypothetical evidence that the State did not present. *Merritt v. State*, 368 S.W.3d 516, 526 (Tex. Crim. App. 2012).

Based on his review of the surveillance footage, Detective Stephens opined that the occupants of the white car could not have shot Jackson. The jury saw the surveillance footage for itself. On this record, we cannot say that the jury's implicit rejection of Smith's alternative hypothesis was irrational, given the evidence the jury heard and the reasonable inferences it could have drawn from this evidence. *See, e.g., Ballard v. State*, 537 S.W.3d 517, 523–24 (Tex. App.—

Houston [1st Dist.] 2017, pet. ref'd) (based on evidence jury could have reasonably rejected defendant's alternative hypotheses that another member of household with access to his computer could have downloaded child pornography or neighbor could have downloaded child pornography using defendant's IP address since his wireless network was not password protected); *Cantu v. State*, 395 S.W.3d 202, 207–08 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (rejecting defendant's argument that evidence was insufficient to prove murder given that his defensive theory was just as plausible as State's theory).

Similarly, Smith argues it is possible that friends borrowed his car, committed the murder, and then returned the car to him before the police spotted the car. In support of this alternative hypothesis, Smith relies solely on testimony given by his mother and a family friend during the punishment phase. In summary, they testified that Smith attracted unsavory friends who used him, including for transportation, due to his vulnerability as a physically disabled person. But evidence the jury heard only after it already rendered its guilty verdict cannot be used to challenge the sufficiency of the evidence supporting the verdict. *Barfield v. State*, 63 S.W.3d 446, 450 (Tex. Crim. App. 2001); *Munoz v. State*, 853 S.W.2d 558, 560 (Tex. Crim. App. 1993); *Carballo v. State*, 303 S.W.3d 742, 746 n.3 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd); *State v. Moreno*, 297 S.W.3d 512, 521–22 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). Because the defense did not introduce the testimony of Smith's mother and family friend as to Smith's vulnerability and exploitation by friends during the guilt-innocence phase of trial, we cannot and do not consider it in assessing the legal sufficiency of the evidence of Smith's guilt.

We overrule Smith's challenge to the legal sufficiency of the evidence.

*Smith*, 2020 WL 7062396 at *3–5.

A state appellate court's opinion following its review of the sufficiency of the evidence is entitled to "great weight." *Parker v. Procunier*, 763 F.2d 665, 666 (5th Cir. 1985) (citing *Jackson*, 443 U.S. at 310, n.15); *see also Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993) ("Where a state appellate court has conducted a thoughtful review of the evidence . . . its determination is entitled to great deference"). To the extent that Smith asks this court to reweigh the evidence and decide if the jury's decision was correct, that is "beyond the scope of review" the *Jackson* standard permits. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995). A federal habeas court may not substitute its view of the evidence for that of the factfinder. *See Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995) (citation omitted). Under the *Jackson* standard, "[a]ll credibility choices and conflicting inferences are to be resolved in favor of the verdict." *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005) (citation omitted). Viewing the evidence under the doubly deferential standard that applies on federal habeas review, the record fails to show that the state court's decision was objectively unreasonable or that Smith is entitled to relief under *Jackson*.

## IV. *No Evidentiary Hearing is Required*

Smith has requested an evidentiary hearing. Whether to hold an evidentiary hearing is governed by 28 U.S.C. § 2254(e)(2) and is within the district court's discretion. *See Williams v. Taylor*, 529 U.S. 420, 436 (2000) (Congress intended "to avoid unneeded evidentiary hearings in federal habeas corpus" proceedings); *Robinson v. Johnson*, 151 F.3d 256, 268 (5th Cir. 1998), *cert. denied*, 526 U.S. 1100 (1999). Under this statute, if an applicant "failed to develop the factual basis of a claim in State court proceedings," then the federal habeas corpus court may hold a hearing if:

(A)    the claim relies on–

> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2)(A)–(B). An evidentiary hearing is not required if there are "no relevant factual disputes that would require development in order to assess the claims." *Robinson*, 151 F.3d at 268. Because this court has been able to resolve all issues raised in this case by referring to the pleadings and the state court record, the court recommends that Smith's request for an evidentiary hearing be denied.

## V.        *Conclusion and Recommendation*

The court recommends that Smith's federal habeas corpus petition be dismissed with prejudice, without an evidentiary hearing. The court further recommends that a certificate of appealability not issue.

The parties have fourteen days from service of this report and recommendation to file written objections. *See* Rule 8(b) of the Rules Governing Section 2254 Cases; 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

Signed at Houston, Texas, on October 30, 2023.

Peter Bray
United States Magistrate Judge